```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
CRAIG COAKLEY,                                              :
                                                            :
                              Plaintiff,                    :       MEMORANDUM
                                                            :       DECISION AND ORDER
              - against -                                   :
                                                            :       16 Civ. 7009 (BMC)
                                                            :
KINGSBROOK JEWISH MEDICAL CENTER,                           :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Craig Coakley filed this action under the Fair Labor Standards Act ("FLSA"), the New York Codes, Rules and Regulations ("NYCRR"), and New York Labor Law ("NYLL") in state court against his employer Kingsbrook Jewish Medical Center ("Kingsbrook"), alleging overtime wage violations under both the FLSA and NYLL, uniform maintenance pay violations under the NYCRR, and wage notice violations under the NYLL.  Kingsbrook removed this case from state court, invoking this Court's federal jurisdiction, specifically federal question jurisdiction because of the FLSA claim, see 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, see 28 U.S.C. § 1367.

Consistent with this Court's Individual Practices, the parties filed a joint letter in anticipation of the Initial Status Conference, wherein Kingsbrook additionally raised that the Labor Management Relations Act ("LMRA") provides further basis for removal because the uniform maintenance pay claim implicates the Collective Bargaining Agreement ("CBA") executed between Kingsbrook and plaintiff's union, 1199 SEIU.  During the Initial Status Conference, the Court inquired as to whether resolution of the uniform pay claim requires interpretation of particular provisions in the CBA such that the LMRA's field preemption was

triggered.  The Court ordered Kingsbrook to supplement its argument regarding the LMRA in a letter and to include the applicable provisions of the CBA.  Having reviewed the CBA and Kingsbrook's arguments, the Court finds that (1) interpretation of the CBA is not required, (2) the LMRA is inapplicable such that there is no federal preemption, and (3) there is no supplemental jurisdiction over the uniform pay claim.  Therefore, as explained in more detail below, plaintiff's third cause of action is severed and remanded to the state court.

## BACKGROUND

Defendant employed plaintiff for approximately 12 years as an X-Ray Technician.  Plaintiff alleges that defendant failed to include shift differentials in its overtime calculations and failed to pay for all hours worked, including those beyond 40 hours per week.  Specifically, plaintiff alleges that when he would perform pre- or post-shift work, defendant failed to pay for that time, which resulted in a denial of overtime pay.  Further, plaintiff alleges that he worked through his unpaid lunch hour two or three times a week, for which he was also not compensated.  Finally, plaintiff alleges that defendant failed to include required notices in his wage statements.

## DISCUSSION

A court may remand a removed case to state court *sua sponte* and absent a motion from plaintiff if it finds its subject matter jurisdiction lacking.  A motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)," but "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c); see also Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth., 435 F.3d 127, 133-34 (2d Cir. 2006) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534 (1986)).

Further, analysis of subject matter jurisdiction is a particularized inquiry for each claim in a complaint. See, e.g., Hoops v. KeySpan Energy, 794 F. Supp. 2d 371, 380 (E.D.N.Y. 2011). The Court finds that, in this case, remand of the third cause of action is proper for lack of subject matter jurisdiction.

## I. Lack of Federal Question Jurisdiction

If a plaintiff's state cause of action will involve substantive analysis of the text in a CBA, then the LMRA preempts the state court from determining the issue because "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law" by a federal court. Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003). The "unusual pre-emptive power" accorded to § 301 of the LMRA "extends to create federal jurisdiction even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim." Vera, 335 F.3d at 114 (citing Livadas v. Bradshaw, 512 U.S. 107, 122 n. 16 (1994)).

Relevant here, the Supreme Court has extended the preemptive effect of § 301 beyond suits alleging CBA violations only:

> [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985). However, "[n]ot every suit concerning employment or tangentially involving a CBA . . . is preempted by section 301." Vera, 335 F.3d at 114. Rather, "the pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences

3

were intended to flow from breaches of that agreement, nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." Id. at 114-15 (quoting Livadas, 512 U.S. at 122-23 (internal citations and quotation marks omitted)).

For example, if a state sets out rules or establishes rights and obligations independent of a labor contract, as the New York legislature appeared to do here in passing the uniform maintenance pay provision, actions to enforce those independent rules, rights, or obligations would not be preempted by § 301. Id. at 115 (citing Allis-Chalmers, 471 U.S. at 212). Similarly, a state claim would not be preempted if its application required mere referral to a CBA for "information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 n. 12 (1988).

Put another way, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas, 512 U.S. at 124. Although "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive," Wynn v. AC Rochester, 273 F.3d 153, 158 (2d Cir. 2001) (*per curiam*), the Second Circuit has provided guidance into the categories of cases where the LMRA's preemption applies.

A claim is preempted under § 301 if the claim falls into one of the following three categories: (1) cases in which a plaintiff alleges that defendant violated the CBA itself, see, e.g., Ellis v. HarperCollins Publishers, Inc., No. 99-CV-12123, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000) ("Because the reported violation [of N.Y. Labor Law § 191(1)(d) ] is based on a failure to pay union employees *in accordance with the terms of a CBA*, however, this violation is

preempted by Section 301 of the [LMRA]." (emphasis added)); (2) cases in which a plaintiff claims that a provision of the CBA itself violates state law, see Vera, 335 F.3d at 115-16 ("[P]laintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA."); and (3) cases in which the CBA provision relevant to the plaintiff's claim is ambiguous, see Salamea v. Macy's E., Inc., 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006) (preempting state law claims because "the CBA contain[ed] detailed requirements for an employee to be eligible for vacation benefits," and the parties "dispute[d] as to whether [plaintiff] was entitled to" those benefits).

Here, resolution of the uniform maintenance pay claim does not fit into any of the recognized categories, and, more than that, based on the CBA, it is clear that interpretation of the CBA is not required because the uniform provision explicitly does not cover plaintiff: The CBA shows that only two job classifications are eligible for uniform pay, neither of which is plaintiff's job classification. Defendant acknowledges as much when it notes that the CBA's uniform pay provision does not expressly cover plaintiff.

However, to get around this, defendant argues that the CBA states that uniform allowances for other employees, which "could" include plaintiff, are to be negotiated. That characterization misstates the CBA. The CBA says that "[i]n cases where an Employee purchases, launders or maintains required uniforms, an appropriate allowance shall be negotiated." Importantly, the CBA states that for the employees where uniform pay shall be negotiated, the uniforms must be required; however, defendant also argues that plaintiff was not required to wear a uniform, which is to say, defendant is simultaneously arguing that the CBA "could" apply to plaintiff while arguing that the CBA effectively does not apply to him.

5

To support its argument that plaintiff could be among the employees that can negotiate under the CBA, defendant points to the fact that plaintiff did receive the uniform pay to suggest that some agreement must have been negotiated.  However, defendant also admits that there is no reference in the CBA, either in the form of a supplement or appendix, to subsequent labor agreements that would necessitate the Court's interpretation of a labor agreement under the LMRA.  Simply, the CBA does not cover plaintiff with respect to covered uniformed employees and the reference to some negotiation in the future does not task the Court with interpreting any supplemental provision of the CBA.

Defendant next argues that the reference to future bargaining necessitates the Court's inquiry into the bargaining history of the CBA and whether the actual payments plaintiff received are a "past practice" that, under applicable labor law, become part of the CBA itself.  That is not the purview of the LMRA.  The LMRA is only concerned with substantive interpretation of language within the four corners of the CBA, of which here there is none.  The LMRA does not task a federal court with inquiring about the contract negotiations between a union and an employer untethered from actual language in the CBA itself.  See, e.g., Hotel Greystone Corp. v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 902 F. Supp. 482, 485 n.1 (S.D.N.Y. 1995) ("Under the LMRA, courts are authorized to consider the parties' past conduct and bargaining history, as well as industry practice, *in interpreting the agreement*." (emphasis added)).  To the extent that defendant is arguing that the Court should look at *past* bargaining to divine what occurred in conjectural *future* negotiations, the Court rejects this position.

Finally, defendant argues that plaintiff's allegation for failure to pay uniform allowances is essentially a claim that the CBA provision regarding uniform pay violates the NYCRR, which is one of the types of allegations that the LMRA is meant to preempt.  This argument fails.

6

Plaintiff does not allege a violation, and the Court will not entertain defendant's attempt to manipulate plaintiff's cause of action, which simply states that he was not paid something he believes he was owed under state law.

For the foregoing reasons, the Court rejects defendant's argument that the LMRA requires federal adjudication of plaintiff's state uniform pay claim.

## II.   Lack of Supplemental Jurisdiction

Defendant argues that even if the Court were to find that there is no LMRA preemption, the Court can still exercise supplemental jurisdiction over the third cause of action "because many of the same documents are relevant to all of Plaintiff's Causes of Action" and because the "common nucleus of operative facts are the wages paid to Plaintiff."  Defendant essentially argues that since all of plaintiff's claims arise out of the parties' employment relationship, all claims referable to that relationship arise out of a "common nucleus of operative facts."  That is too broad a definition of the operative facts at issue for these claims.

Section 1367(a) grants supplemental jurisdiction to any related claim that arises out of the same case or controversy as the original claim that was granted subject matter jurisdiction.  28 U.S.C. § 1367(a).  A court may only exercise supplemental jurisdiction over a plaintiff's state law claim if it arises from the same common nucleus of operative fact as the plaintiff's federal cause of action.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988) ("[A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'")

Here, I find that the FLSA and the NYCRR claims do not arise out of the same common nucleus of operative fact for several reasons.  First, the FLSA claim is for overtime wages, and

7

the uniform maintenance pay are allegations related to "additional compensation in addition to" plaintiff's wages.  Hoops, 794 F. Supp. 2d at 381.  "This additional compensation is not considered a part of the Plaintiff's wages, and therefore does not factor in to the calculation of the Plaintiff's regular rate for purposes of overtime compensation."  Id. (severing the uniform maintenance pay claim and remanding back to state court for lack of supplemental jurisdiction).

Second, contrary to defendant's position, the discovery related to the uniform pay claim will be significantly different from the discovery related to his overtime claims.  In its own letter, Kingsbrook states that the Court would need to inquire about the negotiations between Kingsbrook and the union to understand the basis for the uniform pay that plaintiff received, which, in addition to being outside the LMRA's purview, necessitates a host of unrelated and burdensome discovery inquiries.  For example, given that Kingsbrook states that there is no CBA annex it could locate, then the parties must determine whether plaintiff's uniform pay was the result of union bargaining, plaintiff's own negotiation with his employer, or a *sua sponte* employer practice.  To do that, the parties would need to depose union representatives, Kingsbrook decision-makers, and Kingsbrook human resources.  After the parties have determined who made the decision, then the parties would likely need to engage in document discovery of any other relevant internal emails and documents.

What these lines of inquiry demonstrate is that not only does the NYCRR claim not derive from the same common nucleus of operative fact as the FLSA claim, but also that the claim will substantially predominate over the fairly straight-forward FLSA claim for overtime wage violations, which only requires a review of time records, wage statements, and a few depositions.  A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the claim substantially predominates over the claim or claims over which

the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Here, even if there were supplemental jurisdiction, I would decline to exercise it because of the voluminous amount of discovery necessary to the resolution of the factually distinct state law claim.

Having found that the Court does not have supplemental jurisdiction over the uniform pay claim, the next question is what to do with the claim. Where a civil action that has been removed to federal district court includes state law claims not within the court's supplemental jurisdiction, the court must sever those claims from the federal action and remand the severed claims to the state court from which the action was removed. See 28 U.S.C. § 1441(c)(2). Thus, the uniform maintenance pay claim must be severed and remanded to state court.

As to any concern that this may result in duplicative litigation, I believe, as noted above, that the uniform maintenance pay claim is sufficiently separate from the wage claims that there would be little efficiency gained from adding it on to this action. Nevertheless, it is plaintiff's choice as to whether to proceed with one case or two. If plaintiff determines that there is no relief in the FLSA that he cannot equally obtain under the NYLL, he may voluntarily dismiss the FLSA claim without prejudice, in which case this action would have to be remanded to state court in its entirety. Plaintiff has seven days to notify me whether he wishes to proceed in that manner, absent which only the uniform claim will be remanded.

**SO ORDERED.**

                                                                                 _____
                                                                                          U.S.D.J.

Dated: Brooklyn, New York
       January 28, 2017